KEENE *vs.* LIZARDI ET AL.

Where it appears that the jury were not influenced by the charge of the judge, but found their verdict in direct opposition to it, and on the grounds urged by the plaintiff, he cannot have the verdict set aside because the charge was erroneous and might have misled the jury.

The court will not sanction the rule that the jury must be guided in fixing the amount of damages, by the conduct of the wrong doer, and the value or amount of his property in an action against the owners of a vessel for the wrongs of their agent or captain.

Smart-money or vindictive damages can only be given against the wrong doer or offender, by way of punishment; but not against persons who are only consequentially liable on account of their relation to the wrong doer, as the principal for the acts of his agent.

A cause will not be remanded for errors on the trial, which could have no effect on the merits, or influence the case.

This is an action to render the defendants liable for the conduct of the master and *piloto* of a vessel, of which they are the owners, and to recover damages from them for the injury done to the plaintiff and his wife, on their passage from Vera Cruz to New-Orleans, by the tortious conduct, and

outrageous and indecent treatment of them by the said captain and *piloto.* See the facts of this case stated in 5 *Louisiana Reports,* 431, *and* 6 *Louisiana Reports,* 315.

The damages originally claimed by the plaintiff were twenty thousand dollars. On the return of the case the second time from this court, the plaintiff filed a supplemental petition, claiming one hundred thousand dollars in damages. He further alleges the injuries done to him and his wife by the captain of the vessel, were of so outrageous and diabolical a character that millions cannot atone for them; that the defendants, having the amplest means, omitted to employ proper persons to command the vessel, &c.; that the defendants are immensely rich, so that in awarding damages, the jury are to consider the wrongs and injuries inflicted, in reference to the ability and means of the wrong doers and responsible persons to make compensation. He then prays judgment that the defendants be made liable for the conduct of their captain and *piloto,* and to pay damages as alleged.

The defendants pleaded a general denial. The evidence taken down in writing in the two former trials, together with the documents then introduced, were read to the jury. The defendant introduced two witnesses, who testified to the general good conduct of the *piloto,* while in the command of other vessels. The cause was submitted to a jury, on the testimony as reported in 6 *Louisiana Reports,* 315.

On the trial the plaintiff took bills of exception to the opinion of the court, on the following points:

I. The defendant's counsel offered testimony to prove that under the laws of Mexico the owners of vessels are not liable in damages for the improper and indecent conduct of the captain. It was objected to as irrelevant; the Supreme Court having decided the law in this case. But the court admitted it because the plaintiff referred to some laws of Mexico, and the defendant had a right to prove what they were.

2. Because the court did not clearly understand the decision of the Supreme Court, but believed it to be, that the laws of Mexico are to govern as to the part of the contract

executed in Mexico; and the law of Louisiana, in relation to the part executed here;, and it was the province of the jury to say what part was executed in Mexico, and what here. It was then necessary to have proof of the Mexican laws.

II. The district judge charged the jury that he did not well understand the decision of the Supreme Court the last time this case was before it, as to what laws should govern the contract of passage, but believed that it was the Mexican law, so far as the contract was executed in Mexico; and 'the laws of Louisiana, in relation to the part performed here. But the court was at a loss to state what law was to govern when the vessel was on the high seas. As a general principle in criminal law, the flag is the country, and any high crime committed in a vessel on the *high seas,* was remitted for trial in the country of the flag. But in regard to contracts on the high seas, they were probably governed by the general principles of law and reason. The court further charged, that it considered it was the general commercial law in Louisiana, and not the Civil Code, that was to govern the contract of passage here, &c. The charge was excepted to for want of precision and clearness.

The jury returned a verdict of one hundred dollars for the plaintiff, in damages; but being dissatisfied therewith, he appealed from the judgment rendered, in conformity with the verdict.

*Keene,* in *propria persona.*

1. The judge *a quo* erred in his instructions to the jury. He was commanded by two decisions of this court, in this very case, to lay down to the jury as their guide, the law of this state, which renders the owners of vessels responsible in damages, for the personal wrongs and torts of their commanders towards their passengers, as the only rule which should govern them in making up their verdict.

2. The district judge professed to be ignorant of the part of the *contract of passage* that was executed in Mexico, on the high seas, and in Louisiana; and of the law applicable to the different places. His charge to the jury on these

matters was so confused and manifestly erroneous as to mislead and bewilder them. Had the charge stated the principles settled by this court, twice before, in this case, that ship owners were liable in damages, for the torts of their commanders committed on the passengers, the evidence in this case would have induced the jury to find very different from what they did.

3. But even on the judge's refusal to lay down the law to the jury, as directed by this court, he should, at least, in the confusion and doubts of his *Mexican,* high seas and Louisiana *law medley,* have sought refuge under the common maxim of law : "*In tali conflictu magis est ut jus nostrum quam jus alienum servemus.*"

4. Had the Mexican law exempted ship owners from liability for the torts inflicted by their ship masters upon passengers, yet it would have been inoperative in the United States, because the passage contract, although made in Mexico, was to be executed and consummated in this state. Here the law does attach the responsibility to ship owners for the illegal and wanton acts and torts of their agents or captains. This contract is to be governed in its performance by the *lex loci solutionis.* 1 *Gallison,* 375. 8 *Martin,* *N. S.,* 6 *to page* 34.

5. The only Mexican law relied on by the defendant to prove that ship owners are not responsible for the conduct of their captains, is a mercantile ordinance or commercial code, promulgated by the king of Spain, in 1829, long since the establishment of the independence of Mexico. This law, therefore, has no force either in Mexico or in this state.

6. The agreement for passage in a vessel, is a contract which, from its nature, implies an obligation on the part of the passenger, that he will conform to the regulations of the vessel ; and on the part of the owners and commanders, that his rights, comforts and baggage will be duly respected and protected. Even by the Mexican laws, as well as of Louisiana, the owners are bound and liable for the acts of the masters of vessels. Their treatment of passengers is connected with their duties and obligations ; and, of course,

EASTERN DIST.
March, 1835.
KEENE
vs.
LIZARDI ET AL.

comes within the scope of their employment; otherwise we should arrive at the paradox, the *reductio ad absurdum*, that a functionary would be bound, and not bound to do the same thing at one and the same time.

7. If, then, the owner of a vessel, through culpable neglect or penurious calculations, (as the bad of all sorts is cheaper than the good,) instead of appointing a master duly qualified, should place the vessel under the control of an atrocious monster, he should be strictly and severely answerable in damages, to the party aggrieved, for the atrocities and enormities committed and inflicted by such person or agent.

8. Hence, then, it is clear, first, that ship masters are responsible for their personal torts done to their passengers, in like manner as for injuries done by them to their cargoes; because both classes of wrongs come within the scope of their employment. Second, that ship owners are liable for all wrongs and injuries in the way of damages or indemnity, committed by their captains, within the scope of their employment.

*De Armas* for the defendants.

1. The verdict of the jury cannot be disturbed, because they have pronounced on the points of law and the facts submitted to them. *Code of Practice*, 519, 520.

2. The verdict of the jury must be final, in this case, because it is for the plaintiff on all the points of law and fact, and they are the proper judges of the amount of damages.

*Martin, J.*, delivered the opinion of the court.

This is an action in which damages are claimed from the defendants, as owners of a vessel, on account of the misconduct of the master, in his treatment of the plaintiff and his wife, who were passengers on board during her voyage from Vera Cruz to New-Orleans.

The plaintiff alleges, that the conduct of the master was such, as to allow the sailors to resort at all hours of the day

and night to the cabin, where they were indulged with the free and unrestrained use of spirituous liquors, in consequence of which, they incessantly annoyed Mrs. Keene with gross, obscene and indecent language and gestures, not only when she appeared on deck, but frequently and oftentimes when she had retreated to the cabin.

The defendants resisted the pretentions of the plaintiff, on the ground that owners of vessels are not liable for the misconduct of the master, in a case like the present. This defence was sustained before the inferior tribunal, but disallowed in this court. The defendants then urged that the law of the *terminus a quo* of the voyage, afforded the only ligitimate rule of decision; and that by the Mexican law, owners of vessels are not liable for the excesses of the master. This rule being adopted in the court of the first instance, the plaintiff successfully sought the aid of this tribunal. On the third trial in the District Court, the plaintiff was successful. He obtained a verdict and judgment thereon; but being dissatisfied therewith he has again appealed.

The inadequacy of the damages allowed by the jury, is relied on as the ground on which the judgment is sought to be reversed.

The plaintiff claimed one hundred thousand dollars in damages, and obtained one hundred dollars. The damages awarded amount only to the one thousandth part of the sum demanded as compensation for the injury sustained. This inadequacy is not, however, relied on *per se*, as sufficient to support the plaintiff's application in this court, to have the judgment of the district court reversed. It is further contended that the case affords evidence of the jury having erroneously adopted the Mexican law, as containing the true basis of their verdict; being led into the mistake by the permission given by the judge *a quo* to the counsel of the defendants to read the law of Mexico to them: also by the refusal of the judge to charge the jury that the law of Louisiana contained the correct and legal rule by which they should be guided in making up their verdict, according to

the opinion expressed by this court, on remanding the case the second time. To the charge which the judge *a quo* finally gave to the jury, to his permission to the defendant's counsel to read the law of Mexico, and refusal to instruct the jury to find according to the law of Louisiana, the plaintiff took his several bills of exception.

The judge *a quo* appears to have declined giving the charge required, on the ground that he did not well understand the opinion of this court, which remanded the case for the present trial. He permitted the Mexican laws to be read, because the defendants had a right to avail themselves of those laws; and he gave such a charge to the jury, as, in his judgment, seemed most proper and correct.

This court is not ready to say that, if the verdict had been for the defendants on such instructions and charge as were given to the jury, it would not have been our bounden duty to reverse the judgment and set the verdict aside.

It is very clear that the jury were guided by both the previous decisions and judgments pronounced by this court in the present case, for they have overruled the defence first set up, to wit: that the defendants, as owners of the vessel, were not liable to the action of the plaintiff, under the law of Louisiana; and they have also disallowed the immunity and exemption which was afterwards set up and claimed under the laws of Mexico. It must, therefore, be concluded that the jury were not influenced by any part of the charge of the judge *a quo*, which might be considered to be contrary to the expressed opinion of this tribunal. If they had been thus influenced, their verdict must have been for the defendants. The plaintiff has, however, contended that the inadequacy of the damages is so great that it must be evident that some of the jury were influenced and must have considered the law of Mexico to be in favor of the defendants. Others must have had doubts, or thought the question under the law, doubtful; and the consequence of this error was, to mislead some and create doubts in others of the jurors, and in order to relieve themselves from duresse, all agreed to compromise on a verdict of one hundred dollars for the plaintiff.

EASTERN DIST.
*March*, 1835.

KEENE
*vs.*
LIZARDI ET AL.

It has been said that some times in England, judges hang wretches, that jurymen may dine. We hope that no American jury would mulct a fellow citizen in damages in a case where the law disallows them, and which is so expressed in the opinion of the highest tribunal of the state.

But this court knows of no rule, no *data* by which a correct measure of damages can be ascertained and meted out, in a case like the present. The rule contended for by the plaintiff, appears to us so fallacious that we cannot believe that any jury could ever have adopted, or any court of justice sanctioned it. He urges that the jury must be guided in fixing the amount of damages, by the conduct of the wrong doer, and the value or amount of his property. If that be the case, he who has wasted his property is sure of comparative lenity or impunity. According to this rule, if the jury considered the wrong doer, who, in the present case, is the captain, as a very poor man, the sum of one hundred dollars is as much as they could justify themselves in giving. The circumstance of his having rich owners for his employers, ought not to aggravate the damages to which the plaintiff is entitled for his misconduct; as whatever sum he might recover from the owners, the latter ought to recover from the captain. Thus the captain would be mulcted in proportion to the wealth of the owners. He would, according to this rule, be required to pay much more if the owners were sued (as is now the case,) than could be legally recovered in a suit against himself individually, in the first instance.

It is true, juries sometimes very properly give what is called smart money. They are often warranted in giving vindictive damages as a punishment inflicted for outrageous conduct: but this is only justifiable in an action against the wrong doer, and not against persons who, on account of their relation to the offender, are only consequentially liable for his acts, as the principal is responsible for the acts of his factor or agent.

The plaintiff has further contended that the defendants in this case, are liable as wrong doers, because, although they are immensely rich, their parsimony led them to employ

The court will not sanction the rule, that the jury must be guided in fixing the amount of damages, by the conduct of the wrong doer, and the value or amount of his property in an action against the owners of a vessel, for the wrongs of their agent or captain.

Smart money or vindictive damages can only be given against the wrong doer or offender, by way of punishment; but not against persons who are only consequentially liable on account of their relation to the wrong doer, as the principal for the acts of his agent.

5

EASTERN DIST.
March, 1835.

KEENE
vs.
LIZARDI ET AL.

*cheap agents.* This position is not only unsupported, but is contradicted by the evidence in the cause. The record contains no evidence of the alleged wealth of the defendants, and we have no legal means of knowing their means and condition in life.

A cause will not be remanded for errors on the trial, which could have no effect on the merits, or influence the case.

This court has frequently held that a cause would not be remanded for errors on the trial which could have no effect on the merits or influence the case. 3 *Martin, N. S., 532, 576, and 284.*

From all that appears, the jury decided the law correctly.

If they erred in the assessment of damages, this court will not attribute it to any misdirection of the judge, who declined to express any opinion as to the proper measure of damages. Nothing authorises the belief either that the amount of damages awarded is not the proper one, or that if the case was remanded, another jury would come to a different conclusion.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs in that court, the plaintiff and appellant paying the costs of this appeal.