352 So.2d 197 (1977)
Edwin E. FOSTER, Jr.
v.
Joseph M. HAMPTON et al.
No. 59768.
Supreme Court of Louisiana.
November 14, 1977.
*199 Michael R. Connelly, Baton Rouge, for plaintiff-applicant.
David W. Robinson, Trial Atty., Watson, Blanche, Wilson & Posner, Paul Marks, Jr., Dale, Owen, Richardson, Taylor & Mathews, William H. Cooper, Jr., Beychok, Cooper & Pierson, Joseph F. Keogh, Parish Atty., Charles E. Pilcher, Asst. Parish Atty., Baton Rouge, for defendants-respondents.
DIXON, Justice.
This case involves the liability of a sheriff for the tortious acts of his deputies, and the liability of the parish where the sheriff's department is located.
Edwin E. Foster, Jr. filed a petition for damages alleging he was injured when Deputy Sheriff Joseph M. Hampton, driving an East Baton Rouge Sheriff's Department vehicle and while acting in his official capacity, struck Foster's motorcycle while Hampton was making an illegal left turn. He cited as defendants the deputy sheriff, the sheriff of East Baton Rouge Parish and Aetna Casualty and Surety Company, their liability insurer, basing his claim on a theory of respondeat superior.
The sheriff filed a peremptory exception of no cause of action alleging that "under R.S. 33:1433 and the jurisprudence of the State of Louisiana, liability does not attach to a sheriff under the doctrine of respondeat superior or under the doctrine of master and servant or principal and agent for an alleged wrongful act of a deputy sheriff. . ." The trial court sustained the peremptory exception and dismissed Foster's suit as against the sheriff.
Foster obtained leave of court to supplement and amend his petition by adding East Baton Rouge Parish and its liability insurer, The Fidelity and Casualty Company of New York, as defendants. The parish then filed a peremptory exception of no cause of action on the basis that the sheriff of the parish is a constitutional elective public official and that the parish is not legally responsible for the actions of the sheriff or his deputies; the exception was sustained and suit against the parish was dismissed. Subsequently a peremptory exception was filed by Fidelity and Casualty alleging that since the court had determined there was no liability on the part of the parish, there could be no liability by the insurer; this exception was likewise sustained.
Foster appealed the judgments dismissing the sheriff, the parish and Fidelity and Casualty; all the appeals were consolidated.
The Court of Appeal affirmed the judgments of the trial court maintaining the exceptions and dismissing Foster's suit against those defendants. Foster v. Hampton, 343 So.2d 219 (La.App. 1st Cir. 1977).
Foster first contends that the Court of Appeal erred in not finding that Deputy Hampton was engaged in the performance of an "official duty" which, he argues, would subject the sheriff to liability under the provisions of R.S. 33:1433.
R.S. 33:1433 reads, in pertinent part, as follows:
". . .
No sheriff of any parish of this state, nor his sureties, shall be liable for any act or tort committed by one of his deputies, or by any person commissioned as deputy sheriff by him, beyond the amount of the bond or limits of liability in insurance furnished by said deputy sheriff, unless said deputy sheriff in the commission of the said act or tort, acts in compliance with a direct order of, and in the personal presence of, the said sheriff, at the time the act or tort is committed." (Emphasis added).
Although the above quoted language appeared in the statute in 1950, La.Acts 1950, No. 426, § 1,[1] no cases have yet relied on it *200 as authority in determining the liability of a sheriff for the acts of his deputy.[2]
The jurisprudence on the question of a sheriff's liability for the wrongful acts of his deputy seems, for the most part, to have its genesis in the common law rather than Louisiana statutory law. The inquiry in those cases is based on a distinction between the official and nonofficial acts of the deputies, subjecting the sheriff to liability only for those acts of the deputy while engaged in the performance of an official duty or while acting in his official capacity.[3]
This court in Sanders v. Humphries, 143 La. 43, 78 So. 168, 169 (1918), stated that:
". . . [N]either the sheriff nor the surety on his official bond is responsible for a wrongful act of a deputy sheriff unless it was done in violation or in an unfaithful or improper performance of an official duty."
Then in Gray v. DeBretton 192 La. 628, 188 So. 722 (1939), the court explained the nature of the special relationship between a sheriff and his deputy, relying on common law authorities:
"In discussing this point it must be borne in mind that no liability attaches to the defendant sheriff under the doctrine of respondeat superior, or under the doctrine of master and servant and principal and agent. The relation between a sheriff and his deputy is an official and not a private relation. The deputy is not a representative of the sheriff in his individual capacity, but he is a public officer whose authority and duty are regulated by law. As to the public, whose servants these officers are, the acts and omissions of a deputy sheriff are the acts and omissions of the sheriff himself. So far as the responsibilities of the office are concerned, the sheriff is liable for the acts and omissions both of himself and his deputy. Rich v. Graybar Electric Co., 125 Tex. 470, 84 S.W.2d 708, 102 A.L.R. 171, and annotations 102 A.L.R. 182, ix."[4] 192 La. at 634-35, 188 So. at 724.
Gray has since been cited in virtually every case on the subject of a sheriff's liability for the wrongs of his deputy; even the cases arising after the 1950 amendment to R.S. 33:1433 rely on Gray and fail to base their holding on an interpretation of R.S. 33:1433.[5]
*201 Foster's argument that Deputy Hampton was acting in his official capacity when Foster was injured has already been considered and rejected by the courts of this State.[6] In Gray, supra, a deputy sheriff, while transporting a prisoner to the sheriff's office, struck two pedestrians. The court found that although the deputy was engaged in an official act in conveying the prisoner, the running of the automobile into plaintiffs was not done by color of or by virtue of his office, and, therefore, no liability could be imposed upon the sheriff and his surety. The court stated:
". . . It would seem that if the deputy violated any duty that he owed to plaintiff and his children, the duty violated was not an official duty but was an individual and private duty owed by the deputy to all pedestrians upon the public highway." 192 La. at 639, 188 So. at 726.
The court relied, in part, upon McVea v. Day, 6 La.App. 382, 385 (1st Cir. 1927) wherein it was held that ". . . in traveling or going to a place where an official act is to be performed, the manner in which a deputy travels, is not part of the official act." See also Nielson v. Jefferson Parish Sheriff's Office, 242 So.2d 91 (La.App. 4th Cir. 1970). Therefore, Hampton was not engaged in an "official" act to which the sheriff could be found liable under the jurisprudence.
Foster is wrong in his contention that a finding that Deputy Hampton was engaged in the performance of an official duty would subject the sheriff to liability under the provisions of R.S. 33:1433. R.S. 33:1433 specifically provides that no liability attaches to the sheriff beyond the bond or liability insurance furnished by the deputy unless the act or tort of the deputy was "in compliance with a direct order of and in the personal presence of, the said sheriff, at the time the act or tort is committed." (Emphasis added). The statute contemplates personal liability of the sheriff for those acts he personally controls; for such acts the legislature has determined that the sheriff should be answerable. The sheriff is subject to liability up to the limits of the bond or liability insurance furnished by the deputy for the official acts of the deputy which he does not directly control. No allegation is made by Foster that Hampton was acting in compliance with a direct order of and in the personal presence of the sheriff. Therefore, the sheriff cannot be held liable under the provisions of R.S. 33:1433.
As previously noted, the court in Gray adopted the common law idea that the relationship between the sheriff and his deputy is not one of master and servant or principal and agent; therefore, the doctrine of respondeat superior is not applicable. However, it is well settled that the deputy sheriff is an officer of the state. Williams v. Guerre, 182 La. 745, 162 So. 609 (1935); State v. Jones, 181 La. 390, 159 So. 594 (1935); State v. Titus, 152 La. 1011, 1016, 95 So. 106, 107 (1922). The State, then, may be considered the deputy sheriff's "employer." Although the doctrine of respondeat superior might be available to hold the State vicariously liable for the negligent torts of its employee in the course and scope *202 of his employment, the State is not a party to this proceeding.[7]
Foster next makes the argument that R.S. 33:1433 grants immunity to the sheriff, and, therefore, the statute is no longer effective, due to Art. 12, § 10(A) of the Louisiana Constitution of 1974.
Art. 12, § 10(A) provides:
"Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property."
The First Circuit, in responding to this argument, stated:
"There is no merit in the appellant's position that the protection granted to sheriffs is a governmental immunity, which was abolished by the Louisiana Constitution of 1974, article 12, section 10(A). Sheriffs never had immunity from suit. Their protection against liability is merely a legislative restriction to liability for breach of an official duty. . . ." 343 So.2d at 221.
We agree with the appellate court's conclusion that R.S. 33:1433 does not provide a governmental immunity to the sheriff. The principle that a sheriff is liable only for the official acts of his deputy is subscribed to in jurisdictions throughout the country, and nowhere is the theory of sovereign immunity relied upon in protecting the sheriff from liability. R.S. 33:1433 limits the sheriff's individual liability to acts over which he has direct control. The statute has the additional effect of allowing recovery against the sheriff for acts of the deputy while engaged in the performance of official duties only up to the amount of bond or liability insurance provided by the deputy. The statute was intended to recognize the special relationship between the sheriff and his deputy, which is not the traditional employer-employee relationship. Only when the sheriff personally directs the deputy in a wrongful act does he create the kind of private relationship that would subject him to individual liability. Art. 12, § 10(A), therefore, has no effect upon the liability of a sheriff for a deputy's wrongful acts while performing an official duty.
Foster makes further constitutional attacks upon R.S. 33:1433. He contends his rights to due process and equal protection, under Art. 1, §§ 2, 3 and 22 of the Louisiana Constitution of 1974, have been violated in being denied recovery against the sheriff. These sections read as follows:
§ 2. "No person shall be deprived of life, liberty, or property, except by due process of law."
§ 3. "No person shall be denied the equal protection of the laws . . ."
§ 22. "All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to his person, property, reputation, or other rights."
Foster is correct in his allegation that the right to recover damages for injury is a property right which cannot be denied without due process of law. Angle v. The Chicago, St. Paul, Minneapolis and Omaha Railway Co., 151 U.S. 1, 14 S.Ct. 240, 38 L.Ed. 55 (1893). But there has been no denial of due process or access to the courts here. Foster has a remedy against the deputy sheriff and may further be able to recover against the State, the proper party to sue as "employer" of Hampton in this instance.
Regarding his equal protection claim, so long as the law applies to all persons in the same circumstances and conditions in a like fashion, the requirements of equal protection are met. See State of Louisiana ex rel. Francis v. Resweber, 67 S.Ct. 374, 329 U.S. 459, 91 L.Ed. 422 (1947), rehearing denied, 67 S.Ct. 673, 330 U.S. 853, 91 L.Ed. 1295; State v. Saia, 212 La. 868, 33 So.2d 665 (1948).
In a case where similar attacks to those in the instant case were made upon the 1968 amendment to Civil Code article 1764, *203 making the implied warranty of merchantability and fitness not applicable to contracts for the sale of human blood, plasma, tissue or organs from blood banks or reservoirs, the United States Court of Appeals for the Fifth Circuit stated:
"For over 50 years, the Louisiana courts have recognized the validity of legislative regulation of causes of action, including replacement and even extinction, that one person may have against another for personal injuries. Colorado v. Johnson Iron Works, 146 La. 68, 83 So. 381 (1919). The entire scheme of workmen's compensation is grounded on the acknowledgment of this power. Id. Other state courts have repeated this acknowledgment over the years in other areas. See, e. g., Paul v. Nolen, 166 So. 509, 511 (La.App.1936).
The article is no less valid because it is explicitly directed at the suppliers of blood and blood components. Article 4, § 4 of the Louisiana Constitution [Art. 3, § 12 of the Louisiana Constitution of 1974] prohibits the granting of special immunity for `any corporation, association or individual.' The article has been narrowly construed by the Louisiana courts, which have held that `A statute which is applicable to all persons under like circumstances and does not subject any individual to an arbitrary exercise of power does not violate the due process or equal protection clauses of the state and federal constitutions.' Standard Homestead Assn. v. Horvath, 205 La. 520, 17 So.2d 811, 813 (1944). Thus, as long as privilege or immunity `operates equally and fairly to those who engage in like transactions' and `affects alike all persons pursuing the same business under the same conditions,' the Louisiana Constitution is satisfied. Id. at 814. See, also, Succession of Vincent, 229 So.2d 449 (La. App., 1969). . ." Heirs of Fruge v. Blood Services, 506 F.2d 841, 848-49 (5th Cir. 1975).
The Court of Appeal was correct in its finding that no error was committed by the trial court in sustaining the exceptions of no cause of action by the parish and its liability insurer. We adopt the appellate court's opinion in this regard as our own:
"The Court is of the opinion that as a matter of law, East Baton Rouge Parish exercises no power or discretion in the functioning independently of the governing body of the parish. La.Const. of 1974, art. 5, sec. 27. There can be no vicarious liability on the part of the parish for the acts of the sheriff or his deputies. See Nielson v. Jefferson Parish Sheriff's Office, supra, at page 94 [242 So.2d 91 (La.App. 4th Cir. 1970)].
The appellant's argument that deputy sheriffs must be considered civil service employees of the City Parish government in East Baton Rouge Parish finds no support in the law. Our Supreme Court, in the case of Webb v. Zurich Insurance Company, 251 La. 558, 205 So.2d 398 (La. 1967), acknowledges the unique metropolitan form of the City of Baton Rouge and the Parish of East Baton Rouge and specifically calls attention to the fact that the office of the parish sheriff functions `. . . entirely separate therefrom, the limits of the city and parish not being co-extensive.'
With regard to the exception filed by the parish's liability insurer, we also find that the trial court's ruling was correct, because where there is no liability on the part of the Parish of East Baton Rouge, the insured, there can be no liability on the part of the insurer under its policy. See Smith v. Kelly Labor Service, 239 So.2d 685 (La.App. 4th Cir. 1970), writ ref. 257 La. 173, 241 So.2d 531 (La., 1970)." 343 So.2d at 221.
For the reasons assigned, we affirm the rulings of the trial court and appellate court sustaining exceptions of no cause of action by Sheriff J. Al Amiss, the Parish of East Baton Rouge, and its liability insurer, The Fidelity and Casualty Company of New York, and remand for further proceedings not inconsistent with this opinion.
SANDERS, C. J., and SUMMERS, J., concur in result.
NOTES
[1] The statute was again amended by La.Acts 1968, No. 45, § 1 and La.Acts 1972, No. 722, § 1 the only significant change relevant to our inquiry being addition of the language "or limits of liability insurance."
[2] Before the 1950 amendment, the sheriff appeared to be subject to more extensive liability. Prior to 1950, R.S. 33:1433 provided:

". . . The sheriff of each parish, the Orleans Parish civil sheriff, and the Orleans Parish criminal sheriff are responsible for the deputies whom they appoint. . ."
The forerunner to R.S. 33:1433, § 3542 of the Revised Statutes of 1870, as amended in 1940, stated that the "Sheriff of each parish . . . remains responsible for them [the deputies they appoint]."
Similar language appeared in article 764 of the Code of Practice before its repeal by La.Acts 1934 (3rd E.S.), No. 27, § 2:
"Every sheriff may, with the approbation of the court in which he exercises his duties, name as many deputies as he thinks fit, but he remains responsible for them . . ."
This court in 1887 recognized the civil responsibility of the sheriff for all loss and damage caused by the deputy's misconduct or delinquency under Code of Practice, art. 764, but denied that he would also be subject to criminal responsibility. State v. Budd, 39 La.Ann. 232, 1 So. 453 (1887). Although the court did not make a distinction between the official or unofficial acts of the deputy, the act of serving a writ of attachment would clearly constitute an official act.
[3] In one case the official vs. nonofficial distinction was recognized in interpretation of Code of Practice, art. 764 and R.S. § 2594 of 1870. Grabenheimer v. Budd, 40 La.Ann. 107, 3 So. 724 (1888). The court stated:

". . . The acts performed by the deputy in his official capacity are the acts of the sheriff, . . . It is part of a sheriff's duty to have his deputies under proper control, and to see that they honestly and impartially perform their official duties." 3 So. at 725.
[4] For a more recent collection of the common law cases see 60 A.L.R.2d 873 and 15 A.L.R.3d 1189.
[5] See, e. g., Polizzi v. Trist, 154 So. 2d 84 (La.App. 4th Cir. 1963); Jackson v. Steen, 92 So.2d 280 (La.App. 2d Cir. 1957); Robertson v. Palmer, 55 So.2d 68 (La.App. 1st Cir. 1951).

Andry v. Parish of Orleans, 309 So.2d 814 (La. App. 4th Cir. 1975), was he only case found in which R.S. 33:1433 was even mentioned. The court reversed the trial court's grant of an exception of no cause of action to the sheriff based upon a finding that a deputy's use of excessive force in apprehension of an escaping prisoner could constitute a breach of an official duty. However, in a footnote the court stated that the trial court could have granted a motion to strike plaintiff's demand against the sheriff individually under R.S. 33:1433.
[6] Foster, in his supplemental and amended petition, alleged that:

"Defendant Joseph M. Hampton was on duty at the time of the accident acting in his official capacity as a deputy sheriff in the Civil Division of the East Baton Rouge Sheriff's Department. Therefore Sheriff J. Al Amiss and the Parish of East Baton Rouge are liable under the doctrine of respondeat superior as employers liable for the torts of their employees while the employees are acting in the course and scope of their employment."
In brief he contends that upon a hearing on the merits it will be shown that "Deputy Hampton is a civil deputy sheriff who was in route in an official sheriff's office vehicle to serve official documents when the accident occurred." It appears that Foster's petition did not set forth facts that would show the alleged wrongful act was committed while the deputy was in the performance of an official duty and resulted from the wrongful manner in which it was performed, as required by Gray v. DeBretton, 192 La. 628, 636, 188 So. 722, 725 (1939).
[7] See R.S. 13:5101, et seq. for the procedure to be followed in suing the state, a state agency, or political subdivision.