**Gary BASKIN and Beulah Baskin,
Plaintiffs-Appellants,**

**v.**

**Eugene PARKER and Curtis L. Smith,
Defendants-Appellees.**

**No. 76-4071.**

United States Court of Appeals,
Fifth Circuit.

Feb. 1, 1979.

Gary Baskin, pro se.

Beulah Baskin, pro se.

H. Evans Scobee, Baton Rouge, La., for defendants-appellees.

Before COLEMAN, CLARK and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

"[T]he King hath no prerogative, but that which the law of the land allows him," declared Sir Edward Coke in Proclamations, 12 Co.Rep. 74, 76 (1611). Now, over three centuries later, we examine further the scope of the principle that those who enforce the law must themselves obey it in the light of the federal Civil Rights Act that permits suit against every person who under color of a state law subjects any citizen to the deprivation of the rights secured by the Constitution and the laws of the United States. 42 U.S.C. § 1983.

Mrs. J.A. Baskin and her son, Gary Baskin, seek damages they suffered as a result of an alleged illegal and unreasonable search of their property by the sheriff and deputy sheriff of Franklin Parish, Louisiana. A judgment in their favor was rendered against the deputy sheriff only. They appeal pro se contending that the damages awarded were inadequate and that the failure to find the sheriff personally liable was erroneous.

The action against Sheriff Parker should not have been dismissed because Louisiana law regarding vicarious liability of a sheriff for the acts of his deputy should have been applied, and would have resulted in an assessment of compensatory damages against the sheriff. In addition, the sheriff may be personally liable for punitive damages for his participation in obtaining the warrants and organizing the search party; however, the district court did not make findings regarding facts critical to this issue. Although inferences might be drawn, we believe it appropriate to remand for further findings of fact. The resume of facts that follows includes both those made by the trial court, which we conclude were all supported by evidence of record, and those additional factual conclusions that appear well established by the evidence and consistent with the court's explicit conclusions.

I

Beulah Baskin, the widow of J.A. Baskin who died on September 5, 1974, owns a 320 acre farm in a rural area in Franklin Parish, Louisiana, near the town of Winnsboro; Gary Baskin, her son, owns a 400 acre farm in the same area. At the time of the events in question, both were residing in a house situated on Gary's farm; a home on Mrs. Baskin's property was rented to a young couple.

On September 17, 1974, Curtis L. Smith, a deputy sheriff for Franklin Parish, obtained warrants to search the Baskin properties, including 120 acres owned by the J.A. Baskin estate, for marijuana and related paraphernalia. Smith lacked probable cause to obtain the warrants because his informants were not credible, and he knew or should have know that the information that had been supplied to him was based on personal grievances against Gary Baskin. The trial court found that, under the circumstances, he had a duty to check the allegations for distortion, misconception or outright untruth.

There was evidence in the record from which the conclusion might have been reached that Sheriff Parker knew before the warrant was obtained of the circumstances surrounding the investigation and participated to some extent in obtaining the warrant, or that he supervised Smith's activities in doing so. Moreover there was evidence that, on the day the warrant was executed, at least part of a posse of four state troopers, three or four deputy sheriffs and the town marshall and his deputy gathered in the sheriff's office, and that the sheriff to some extent directed the posse's activities.

After the warrant was issued, "several" deputies, including Smith, who was apparently in charge, together with the state troopers, left the office in Winnsboro and proceeded to the Baskin property. There they conducted a search described by the trial judge as "transcending the limits of police restraint," and "left a path of destruction upon plaintiffs' property." They forcibly entered both the Baskins' home and their rent house; they destroyed some of their property; they forced locked doors and windows.

The complaint charged violations both of 42 U.S.C. § 1988 and § 1985. With respect to the Section 1985 charge, the court found that there was no evidence that Sheriff Parker and Deputy Smith conspired "to deprive the plaintiffs of their federally protected rights." The infringement was not proved to be the "result of any overt plan or scheme to embark upon such activity." The court found a violation of Section 1983 by Deputy Smith on the basis that he not only procured the warrants improperly but also participated in executing them in an unreasonable manner.

The court held, however, that the evidence "did not establish *any* such participation by the Sheriff" in the "denial of their constitutional rights." (Emphasis supplied.) The trial judge evidently concluded that Sheriff Parker arrived at the Baskin property after the search was in progress or had been virtually completed, but the opinion neither states nor implies any findings with respect to whether the Sheriff participated in obtaining the warrants or in directing their service and execution. The court also held that the Sheriff was not vicariously liable under the doctrine of *respondeat superior.*

Concluding finally that the police conduct in executing the search "shocks the conscience," the court awarded $250 to Gary Baskin and $13.85 to his mother for property damage. He awarded each of them $100 as punitive damages. He decided that plaintiffs' counsel had presented the case so ineptly that attorney's fees should be denied. Defendant Parker has tendered the amount awarded.

Despite the evident difficulties created by the manner in which counsel then representing the plaintiff prepared—or, more accurately, failed to prepare—for the trial, and in which he presented the evidence, the judge presided patiently and carefully; he commendably and sensitively inquired into matters neglected by counsel. The plaintiffs attack his findings in only three respects: dismissal of the action against the Sheriff; failure to find a conspiracy; and the amount of damages awarded.

## II

■ The circuits are divided on the question of vicarious liability under Section 1983 for acts in deprivation of civil rights. Two circuits have held that the doctrine of *respondeat superior* is inapplicable to a Section 1983 action, *see Sebastian v. United States*, 8 Cir. 1976, 531 F.2d 900, 904 and *Williams v. Vincent*, 2 Cir. 1974, 508 F.2d 541, 546; two other circuits, including this one, have held that Section 1983 embraces derivative liability. *See Taylor v. Gibson*, 5 Cir. 1976, 529 F.2d 709, 716; *Tuley v. Heyd*, 5 Cir. 1973, 482 F.2d 590, 594; *Hesselgesser v. Reilly*, 9 Cir. 1971, 440 F.2d 901, 903. Compare *Monell v. Dept. of Soc. Svcs.*, 1978, 436 U.S. 658, 690–950, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611, 636–38. In this circuit, "the question of a sheriff's vicarious liability under Section 1983 for acts of his deputy is controlled by state law." *Tuley v. Heyd, supra,* 482 F.2d at 594 and cases there cited. *See also Hesselgesser v. Reilly, supra,* 440 F.2d at 903. Therefore, the district court should have looked to the law of Louisiana to determine whether the Sheriff was liable for the acts of his deputy.

■ Louisiana law makes a sheriff personally liable for those acts of his deputies that he directs and that occur in his presence. The bond furnished by his deputies or their liability insurance policy provides the maximum indemnity for all their other acts within the scope of their official duties, including those acts committed out of the sheriff's presence or not directed by him. La.Rev.Stat.Ann. § 33:1433 (West); *Foster v. Hampton*, La.1977, 352 So.2d 197. Compare *LeJeune v. Allstate Ins. Co.*, La.Ct. of App.1978, 356 So.2d 537, 542, La. *cert. granted*, 358 So.2d 956. The Louisiana statute and jurisprudence do not, however, prescribe that only the bondsman or insurer may be sued; they appear to provide that the sheriff is liable as a defendant although the amount of his liability may not exceed the prescribed limits for bond or insurance. The relationship between the sheriff and his deputies is neither master-servant nor principal-agent, and the sheriff's liability is not

based on the doctrine of *respondeat superior, see Foster v. Hampton, supra*, 352 So.2d at 201, and *Gray v. De Bretton*, 1939, 192 La. 628, 188 So. 722, but it is, nevertheless, a form of limited vicarious liability.

Deputy Smith's search of the Baskin property pursuant to warrants he had obtained with Sheriff Parker's approval clearly was within the scope of his official duties even though it occurred out of the sheriff's presence. Thus, applying Louisiana law, Sheriff Parker is liable for the search conducted by Deputy Smith and by the search party Smith directed, although only to the extent of Deputy Smith's bond or the limits of the liability insurance that covered Smith. The district court, therefore, improperly dismissed the Section 1983 cause of action against Sheriff Parker. We also conclude, for reasons explained below, that under Louisiana law Sheriff Parker is not vicariously liable for punitive damages.

Louisiana courts view punitive damages as punishment for an offender or as a deterrent to him and to others. *See McGee v. Yazoo, & M. V. Railroad*, 1977, 206 La. 121, 19 So.2d 21; *Loeblich v. Garnier*, La.Ct. of App.1959, 113 So.2d 95, 103. These purposes would not be served by subjecting a person to vicarious liability for the acts of others. Thus, the Louisiana Supreme Court has previously held punitive damages to be inappropriate in cases in which liability is predicated solely upon the relationship of the defendant to the wrongdoer. *Keene v. Lizardi*, 1835, 8 La. 26, 33. Our conclusion that a Louisiana court would not award punitive damages against Sheriff Parker on the basis of his vicarious liability for the acts of Deputy Smith is further supported by the fact that Louisiana law forbids the award of punitive damages in civil cases unless specifically provided for by statute, *see, e. g., Terry v. Butler*, 1960, 240 La. 398, 123 So.2d 865, and *McCoy v. Arkansas Natural Gas Co.*, 1932, 175 La. 487, 143 So. 383, *cert. denied*, 1932, 287 U.S. 661, 53 S.Ct. 220, 77 L.Ed. 570; La.Rev.Stat.Ann. § 33:1433 (West) does not specify that a sheriff is liable for punitive damages for the acts of his deputies, and no other statute appears to provide for such damages in this case.

Although Sheriff Parker is not liable for punitive damages on the basis of vicarious liability under Section 1983, there is some question as to whether he may be personally liable for punitive damages under that section because of his participation in obtaining the warrants and organizing the search party. The dismissal of the Sheriff from personal liability for the unreasonable manner in which the warrant was executed is supported by evidence that he did not accompany the search party and that he arrived at the Baskin property after entry into the houses had been effected and the search commenced. There is no evidence that he participated in any property destruction.

However, as we have noted, there was neither explicit nor implicit finding with respect either to his participation in obtaining the warrants or to his part in organizing the search. According to his own testimony, "I had been trying to get enough information together to in fact get a search warrant or to make a case on this particular defendant. . . . [W]e had been working the cases for quite some time." He testified that he was aware of the hearsay nature of the evidence and of the source of at least some of it. He made no effort to have Mrs. Baskin served. Moreover, State Trooper Don McDonald testified that at least part of the posse of seven to ten men assembled in the Sheriff's office, and that Sheriff Parker directed two of the men, a deputy and a state trooper, to go to the place Gary Baskin was employed to attempt to locate him and bring him to the property, with instructions that, if they could not, they were to rendezvous with the rest of the group at a church near the Baskin property and join them in the raid. The sheriff's brief concedes, as he must, that he authorized the investigation and organized the search party.

This evidence points toward active participation by Sheriff Parker in obtaining the warrants and in supervising their execution. The trial court should have made express findings as to whether these actions

by the Sheriff violated Section 1983, and whether the extent of his participation rendered him liable for punitive damages.

### III

■ Section 1985 does not grant a cause of action for every conspiratorial tort or for every wrong committed by common plan or design; it grants a federal cause of action only for conspiracies to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." A racial or class-based animus is an essential element of an action under 42 U.S.C. § 1985(3). *Griffin v. Breckenridge*, 1971, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338; *Atkins v. Lanning*, 10 Cir. 1977, 556 F.2d 485, 489; *McLellan v. Mississippi Power & Light Co.*, 5 Cir. 1977, 545 F.2d 919, 924, 928–29; *Ohio Inns, Inc. v. Nye*, 6 Cir. 1976, 542 F.2d 673, 678–79, *cert. denied*, 1977, 430 U.S. 946, 97 S.Ct. 1583, 51 L.Ed.2d 794; *Harrison v. Brooks*, 1 Cir. 1975, 519 F.2d 1358, 1359–60. The plaintiffs neither alleged nor proved any facts tending to show any class-based animus on the part of either Sheriff Parker or Deputy Smith, both Caucasians, against the Baskins, a white farm family. Accordingly, we affirm the conclusion that a conspiracy in violation of Section 1985 was not proved.

### IV

Compensatory damages for the deprivation of a federal right are governed by federal standards as provided in 42 U.S.C. § 1988. *Sullivan v. Little Hunting Park, Inc.*, 1969, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386. This means "that both federal and state rules on damages may be utilized, whichever better serves the policies expressed in the federal statutes." *Id.* 396 U.S. at 240, 90 S.Ct. at 406, 24 L.Ed.2d at 394. Both federal and Louisiana law recognize the right to recover for items of damage that the trial court failed to allow the Baskins to recover.

Emotions are intangible but they are none the less perceptible. The hurt done to feelings and to reputation by an invasion of constitutional rights is no less real and no less compensable than the cost of repairing a broken window pane or a damaged lock. Wounded psyche and soul are to be salved by damages as much as the property that can be replaced at the local hardware store.

Thus, in a number of cases, the federal courts have recognized that personal humiliation, embarrassment, and mental distress imposed as a result of the deprivation of constitutional rights are injuries whose redress in damages is considered compensatory. *E. g., Garner v. Giarrusso*, 5 Cir. 1978, 571 F.2d 1330, 1339; *Hostrop v. Board of Junior College District No. 515*, 7 Cir. 1975, 523 F.2d 569, 579–80, *cert. denied*, 1976, 425 U.S. 963, 96 S.Ct. 1748, 48 L.Ed.2d 208; *Williams v. Matthews Co.*, 8 Cir. 1974, 499 F.2d 819, 829, *cert. denied*, 1974, 419 U.S. 1021, 1027, 95 S.Ct. 495, 507, 42 L.Ed.2d 294, 302; *Seaton v. Sky Realty Company*, 7 Cir. 1974, 491 F.2d 634, 636.

Under Louisiana law, too, "damages for mental anguish, aggravation, distress and inconvenience, are recoverable in an action sounding in tort." *Meador v. Toyota of Jefferson, Inc.*, La.1976, 332 So.2d 433, 438. *See* La.Civ.Code Ann. art. 2315. Such damages are compensatory rather than punitive in nature, *see, e. g., Fontenot v. Magnolia Petroleum Co.*, 1955, 227 La. 866, 80 So.2d 845, *McGee v. Yazoo & M. V. Railroad*, 1944, 206 La. 121, 19 So.2d 21, and are separate and distinct from compensation for physical injury, *see Trahan v. Perkins*, La.Ct. of App.1967, 197 So.2d 96, 99. Thus, Louisiana courts have awarded damages for intangible injury to human sensibilities in a variety of situations. *See, e. g., Anderson v. Welding Testing Laboratory, Inc.*, La.1974, 304 So.2d 351 (apprehension that radiation burns might cause cancer); *Boutte v. Hargrove*, La.1974, 290 So.2d 319 (assault and battery); *Clark v. I. H. Rubenstein, Inc.*, La.Ct. of App.1976, 335 So.2d 545 (wrongful accusation of shoplifting); *Hayes v. Dompe*, La.Ct. of App.1976, 331 So.2d 874 (wrongful seizure of property); *Booty v. American Finance Corp. of Shreveport*, La.Ct. of App. 1969, 224 So.2d 512, *cert. denied*, 254 La. 782, 226 So.2d 771 (unreasonably coercive

creditor communication with debtor's employer); *Edwards v. Butler,* La.Ct. of App. 1967, 203 So.2d 90 (improper extrajudicial repossession); *Ford v. State Farm Mutual Automobile Insurance Co.,* La.Ct. of App. 1962, 139 So.2d 798 (mental distress caused by automobile accident which resulted in no physical injury). Therefore both federal and state precedents support the award of damages to the Baskins for the humiliation and personal indignity visited on each of them as a result both of the wrongful application for and improper execution of the warrants.

█ In a small community where each resident is known to the neighbors the humiliation from an unlawful search by a number of officers is evident. The emotional distress was aggravated by the circumstances; the Baskin family was of good repute and recently bereaved. Their tenants moved rather than risk another incident. The fact that no criminal charges resulted neither allays suspicion nor repairs the harm to reputation. Moreover, some damage was done merely by the wrongful procuration of the warrants. While these matters may not have been briefed to the trial court, and the issues concerning them may have been inadequately framed, the right to relief was shown by the testimony and covered by the pleadings. The trial judge should have awarded a suitable sum for the emotional injury suffered by each of the defendants.

We therefore reverse the dismissal of the Section 1983 action against Sheriff Parker and remand the case for the award of damages for humiliation and emotional distress; for determination whether or not judgment should be rendered against Sheriff Parker personally for his own participation in the issuance and execution of the warrants; and thereafter for reconsideration of the amount of punitive damages as to both defendants. The trial judge may, should he find it desirable or necessary, take additional evidence, but he need not do so if he considers the evidence adequate; in that event, he may make these findings on the basis of the testimony he has already heard.

In any event, of course, the liability of Sheriff Parker for his deputy's acts is to be limited as provided in La.Rev.Stat.Ann. § 33:1433 (West).

Reversed and Remanded.