**Eileen C. MACLENNAN et al., Plaintiffs,**

v.

**AMERICAN AIRLINES, INC., Defendant.**

**Civ. A. No. 76–322–A.**

United States District Court,
E. D. Virginia,
Alexandria Division.

Oct. 21, 1977.

Elizabeth R. Rindskopf, Lawyers' Committee for Civil Rights Under Law, Washington, D. C., Geoffrey Judd Vitt, Cohen, Vitt & Annand, Alexandria, Va., for plaintiffs.

Henry T. Wickham, James C. Roberts, Mays, Valentine, Davenport & Moore, Richmond, Va., for defendant.

## MEMORANDUM OPINION

ALBERT V. BRYAN, Jr., District Judge.

This is a class action brought by plaintiffs Louise Miliotes and Linda Timberlake pursuant to Section 703(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a) (the Act). Jurisdiction is present pursuant to § 706(f) of the Act, 42 U.S.C. § 2000e–5(f), and 28 U.S.C. § 1343(4).

Plaintiffs seek injunctive and equitable relief, including back pay and attorneys' fees, to redress the discriminatory effects of certain employment practices and policies of defendant American Airlines, Inc. ("American") relating to pregnancy and maternity leave disabilities of defendant's ground and flight attendant employees. Plaintiffs allege that these practices and policies constitute unlawful sex discrimination under Title VII.[1]

. This action was certified as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure by this Court's order of November 12, 1976. The class is defined as follows:

(1) . . . .[2]

(2) All past, present, and future female ground employees of American Airlines, Inc., employed at any time since July 2, 1965, who are adversely affected by defendant's maternity policies; and

(3) All past, present, and future female flight attendants of American Airlines, Inc., employed at any time since July 2, 1965, who are adversely affected by defendant's maternity policies and weight program insofar as it impacts on maternity.

The case was tried to the Court on September 12 and 13, 1977, on the following issues:

(a) Whether American's maternity leave policy for flight attendants limits the em-
ployment opportunities and adversely affects the status of American flight attendants on the basis of sex.

(b) Whether American's maternity leave policy for ground attendants limits the employment opportunities and adversely affects the status of American ground attendants on the basis of sex.

(c) Whether American's denial of sick leave, disability pay and full health benefits to employees placed on maternity leave constitutes unlawful discrimination under the Act.

At the conclusion of the plaintiffs' evidence the Court granted defendant's motion to dismiss the claim that American's policy with regard to full health benefits was unlawful, on the ground that this part of the issue referred to in (c) above was governed by *Gilbert, supra,* and that there had been no evidence that that policy was a "pretext designed to effect an invidious discrimination against the members of one sex . . .," *Gilbert* at 134, 97 S.Ct. at 407, or that the financial benefits of the plan worked to discriminate against members of the female sex. *Gilbert* at 138, 97 S.Ct. 401.

At the conclusion of all the evidence and orally from the bench the Court decided the issue framed in (b) above in favor of the defendant. That policy, the evidence revealed, is as follows:

Any female employee is eligible for maternity leave of absence during pregnancy. If the employee wishes to work beyond the 26th week of pregnancy, she must obtain a statement from her personal physician certifying that she should be permitted to do so and the AA Medical Services office will make the final decision as to how long an employee will be authorized to work. An employee may return from a maternity leave of absence

---

1. The action originally sought additional relief with regard to allegedly discriminatory promotion and transfer practices and policies. That aspect of the action was settled by a consent decree entered on February 3, 1977. The aspects of the action relating to pregnancy and maternity leave disabilities had been stayed pending the expected decision of the Supreme

Court in *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). On June 17, 1977, this Court dissolved the stay.

2. The first subclass, including female employees affected by American's promotion policies, has been eliminated through the settlement referred to in fn. 1.

earlier than six weeks after delivery if AA Medical Services approves. A maternity leave of absence may be taken up to two years if medical complications follow the delivery and the employee's physician and AA Medical Services so approve. If, for any other reason, an employee wishes to extend her maternity leave beyond six weeks, she may request and obtain a personal leave of absence of up to 180 days beyond the six-week period.

(Stipulation II, para. 27.)

Despite evidence to the contrary by the witness Babchek, the Court found that the policy was enforced as written and that the policy, both as written and as enforced, does not constitute gender based discrimination. Nor was there any evidence of gender based effect as a result of the policy. Moreover, rather than an across-the-board prohibition against a ground attendant's working during pregnancy or after a specific time following becoming pregnant, there is an individualized determination by the employee, her doctor and American's medical examiner as to a particular employee's ability to continue her job. *Cf. Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 644, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974).[3]

Post-trial briefs have been submitted on the remaining issues in the case, and counsel presented oral argument on October 14, 1977.

\* \* \* \* \* \*

The defendant argues, as it did in its motion for summary judgment, that *Gilbert* is dispositive of the issues concerning the maternity leave policy for flight attendants. Were the issue in *Gilbert* the one framed by Mr. Justice Stevens in his dissenting opinion,[4] American might be correct. And there is in the language of the majority opinion some support for American's posi-

tion. However the issue decided by a majority of the Court is not the one framed in the dissent. Nevertheless, this Court is not without some guidance as to how *Gilbert* is to be construed. In *Cook v. Arentzen*, —— F.2d —— No. 76–1359 (4th Cir., May 6, 1977) the Court, in answer to the claim that *Gilbert* supported the validity of a challenged regulation which required the termination from service of all women naval officers who became pregnant, had the following to say concerning *Gilbert* :

> That case and the earlier *Geduldig v. Aiello*, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), having nothing to do with foreclosing employment opportunity. It is an insurance case and simply allows the exclusion of pregnancy-related disabilities from an employer's disability benefits plan. Nothing in *Gilbert* licenses an employer to permanently fire an employee for the "offense" of becoming pregnant. *See Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974).

p. 471.

It is of course true that there is no permanent firing of the plaintiffs here, and the fact that the Court cited *LaFleur* and the employer was a governmental one indicates no equal protection issue was involved. However, those factual distinctions do not detract from the view that the Court felt *Gilbert* is of limited application. Further insight into the Fourth Circuit's view of *Gilbert* may be implied (although the Court did not discuss the issue) from its handling of the case of *Condit v. United Air Lines, Inc.*, 558 F.2d 1176 (4th Cir., 1977). That case involved maternity leave policies of United similar to those involved here. After weighing conflicting expert testimony the trial court in *Condit* ruled that United's

---

**3.** *LaFleur* was decided on due process grounds, the restrictions of which of course do not limit a non-governmental employer such as American. However, the Court's analysis of whether the regulations there involved were necessary to further legitimate employer interests, is instructive when faced with the issues present in the instant action. *Cf. Gilbert, supra*, 429 U.S. at 133, 97 S.Ct. 401.

**4.** "Does a contract between a company and its employees which treats the risk of absenteeism caused by pregnancy differently from any other kind of absence discriminate against certain individuals because of their sex?" *Gilbert, supra*, at 161, 97 S.Ct. at 421.

policy was a bona fide occupational qualification ("bfoq"). Had *Gilbert* been dispositive of the issues in that case the question of bona fide occupational qualification need never have been reached by the Court of Appeals since no prima facie case could have been shown.

American's policy for flight attendants is as follows:

(1) Any flight attendant who becomes pregnant must immediately, upon knowledge of pregnancy, deliver to American written notice thereof together with a statement from her doctor specifying the date upon which the doctor learned of the condition and the expected date of delivery. Upon receipt of such notice and statement, the flight attendant will be removed from active service and placed on maternity leave of absence. Failure to report pregnancy is cause for termination of employment.

(2) A maternity leave of absence for flight attendants commences upon request of such leave and expires no sooner than 45 days, but no later than 90 days, following termination of the pregnancy by birth or no later than 5 days following termination of pregnancy in another manner.

(3) A flight attendant on maternity leave must give American's medical examiner prompt written notice of termination of the pregnancy and must also give American written notice of her intent to return to employment. Failure to do so is cause for termination of employment.

(4) A flight attendant may be granted an extension of maternity leave of absence if such is requested by her personal physician and approved by American's medical examiner, but in no case shall maternity leave exceed six months after termination of pregnancy by birth or two months after termination in another manner.

(5) American will reinstate the flight attendant to active service at the expiration of her leave provided she satisfactorily passes an appropriate medical examination.

(6) A flight attendant who returns from maternity leave of absence is required to meet all qualifications as they existed on the date the leave of absence commenced.

(7) American does not provide sick pay to flight attendants absent on maternity leave.

(8) Neither vacation time nor sick pay accrues during the period of the maternity leave.

### Leave-Upon-Knowledge

■ The rule has an adverse effect on females. Even if it is thought that the rule is neutral on its face because only females can become pregnant, the rule's *application* has a gender-based discriminatory effect. Female flight attendants have been denied employment opportunity *even though they physically were able to continue working*. No male, including male flight attendants, is denied an employment opportunity even though physically he is able to continue working. Thus, the rule's impact falls more heavily on females than males. Under now familiar principles this makes out a prima facie case of discrimination.

■ Once a prima facie case is established the burden shifts to the defendant to justify the practice or policy under attack by a preponderance of the evidence. *McDonnell Douglass Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Griggs v. Duke Power Co.*, 401 U.S. 424, 432, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). A defendant can claim the statutory defense available in 42 U.S.C. § 2000e-2(e) which provides that a gender-based discrimination can be justified if it is ". . . a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise." However, this exception to Title VII liability is "an extremely narrow exception." *Dothard v. Rawlinson*, —— U.S. ——, ——, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977).

This Court, as were the trial courts in *Condit v. United Air Lines, Inc., supra*, and *Harriss v. Pan American World Airways, Inc.*, 437 F.Supp. 413 (N.D.Cal.1977), is presented with conflicting expert testimony on the question whether pregnancy could

incapacitate a female flight attendant in ways that might threaten the safe operation of aircraft or threaten the health of the mother or fetus, or both. The Court's resolution of those conflicts, however, is different from that of those courts.

The Court assumes, for the purposes of this opinion, that the performance of safety duties in a planned or unplanned evacuation is an important function of a flight attendant. However, the importance of physical strength and capacity when attending to these safety functions is minimized by the lack of health and physical requirements imposed upon the flight attendants by both the government agency charged with overseeing flight safety—the Federal Aviation Administration (FAA), and the airline itself. FAA regulations deal extensively with all aspects of the qualifications for flight crew members, including numerous specific health requirements. 14 CFR Part 67. This stands in sharp contrast to the minimal FAA qualifications for the position of flight attendant. The regulations only touch upon flight attendant training and the specific in-flight announcements relating to safety. 14 CFR § 121.421. Significantly, the FAA does not require any periodic medical examinations of flight attendants while mandating twice-yearly checkups for flight crew members.

Additionally, the FAA on at least two occasions has expressed its position on this matter: ". . . we feel that a pregnant woman with no complications is in good health. The consideration of whether a flight attendant should fly when pregnant continues to be a matter between herself, her doctor and her employer." Letter from H. L. Reighard, M.D., Federal Air Surgeon, January 31, 1977. Plaintiffs' exhibits 66 and 67. Of course, the regulations require that an attendant be able to perform his/her duties at all times. The likelihood of this ever being a problem because of pregnancy-related disabilities is so small as to be *de minimis*.

The Court has considered the testimony regarding the predictability, preventablity and likelihood of increase in girth, nausea, vomiting, fatigue and somnolence, backache, dizziness, fainting, urinary frequency, edema, aggravation of varicose veins, increased cardiovascular load, impairment of blood flow, altitude hypoxia, pyelitis of pregnancy, preeclampsia, and threatened or actual spontaneous abortion to the extent that they would interfere with the ability of a pregnant flight attendant to perform her duties. With this consideration in mind the Court makes the following general findings:

(1) *Some* female flight attendants become physically incapacitated from being able to perform their duties during the first and second trimesters of pregnancy.

(2) A substantial number of pregnant female flight attendants are desirous and physically capable of continuing to work, at least through the 26th week of pregnancy [5] without any risk of a disabling event in the course of the pregnancy which could occur during flight and would prevent her from performing her safety duties or could expose the mother or fetus to substantial harm.

(3) In a normal, healthy, doctor-supervised pregnancy, the risk of an unpredictable (by which is meant notice in time to advise the airline of the incapacity without disruption to the business of the airline) threatened or actual spontaneous abortion, or incapacitating nausea, vomiting, fatigue and somnolence, backache, dizziness, fainting, and urinary frequency, while theoretically possible, is so remote as to be negligible.

(4) The ability of a pregnant flight attendant to continue working through the 26th week of pregnancy without the risks mentioned above can be diagnosed on an individual basis after consultation among the flight attendant, her doctor and a medical representative of the airline. Dealing with pregnant flight attendants in this way is not impractical and it is not unreasonable

---

**5.** The Court, for the purposes of this opinion, will measure the gestation period from the first day of the woman's last normal menstrual period until delivery, normally a forty week span.

for the airline to have a role in this determination. On the infrequent occasion of a difference of medical opinion on a given flight attendant's fitness to continue flying, the Court is willing to give the company the final say, assuming the determination is a close one. As the court said in *Usery v. Tamiami Trail Tours*, employers should "err on the side of preservation of life and limb." 531 F.2d 224, 238 (5th Cir. 1976).

■ From the foregoing, the Court concludes that the defendant has not borne its burden to show that its requirement that all pregnant flight attendants be removed from flight service and placed on maternity leave is "reasonably necessary to the normal operation of that particular enterprise" within the meaning of 42 U.S.C. § 2000e–2(e). As in *Condit*, this Court is aware of the high duty of care a carrier owes its passengers, but the incantation of a safety rationale is not an abracadabra to which this Court must defer judgment. The defendant must prove that the policy is reasonably *necessary*, not merely that it is "reasonable," as the defendant apparently contends. *Usury v. Tamiami Trail Tours, Inc., supra*, at 236. Clearly, were this a case of "experiment[ing] with the lives of passengers," *Hodgson v. Greyhound Lines, Inc.*, 499 F.2d 859, 865 (7th Cir. 1974), this Court would have decided differently. However, American has failed to demonstrate in this case that its stop/start policy has a significant safety-related nexus. Therefore, insofar as the regulation requires automatic termination of women prior to the 26th week of gestation who are both desirous and, with individualized medical consultation and certification, capable of continued service, it is invalid and must be enjoined.

■ Nor, to the extent that that defense differs from the bfoq defense, can the policy be defended as a "business necessity." As indicated before, there is no reasonable factual basis upon which to believe that a change from the existing maternity leave policy of American would undermine the essential nature of American's business— namely, the safe and efficient transporta-

tion of passengers. Certainly no correlation between pregnancy and incapacity has been shown, statistically or otherwise. It is perfectly feasible to judge the ability of pregnant flight attendants to perform their duties on an individual basis and a generalized rule for all such employees is therefore inappropriate. The alternative of permitting those desirous of working to continue to do so until the 26th week upon the conditions mentioned is one which would not interfere with the essential nature of American's business. The arbitrary leave date of American is not supported, accordingly, by business necessity.

## Return to Work

■ No evidence has been presented by the plaintiffs that, following termination of pregnancy, female flight attendants who were physically able to return to work before 45 days have been denied that opportunity. Consequently no gender based discrimination has been shown.

## Sick Pay—Vacation Pay

While the granting of certiorari in *Satty v. Nashville Gas Company*, 522 F.2d 850 (6th Cir. 1975), *cert. granted* 429 U.S. 1071, 97 S.Ct. 806, 50 L.Ed.2d 788 (1977), and *Berg v. Unified School District*, 528 F.2d 1208, *cert. granted* 429 U.S. 1071, 97 S.Ct. 806, 50 L.Ed.2d 788 (1977), may cast some doubt on this view, the Court is of the opinion that the denial of sick pay and vacation pay to flight attendants while they are on maternity leave is governed by *Gilbert, supra*. The Court rejects plaintiffs' contention that these benefits are somehow an integral part of an employee's compensation. American's sick leave policy is so similar in purpose, function and application to its short-term disability policy, that it must necessarily fall within the ambit of *Gilbert*. Plaintiffs can still prevail if the policy is shown to be a pretext for discrimination on the basis of sex. There is no evidence that denial of these benefits is such a pretext.

\*     \*     \*     \*     \*     \*

In addition to the findings contained in this opinion, the Court adopts, as its findings of fact Stipulations II (attached as Appendix I), and plaintiffs' proposed findings of fact numbered 10, 12, 13, 14, 15, 16, 21, 22, 25, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 40, 41, 42, 43, 44, 45, 47, 48, 49, 51, 53, 54, 55, 56, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 72, 73, 74, 75, 76, 79, 80, 82, 87, 88, 89, 94, 95, 96, 97, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 123, 124, 125, 129 and 132.

The Court has considered the defendant's objections to certain of the plaintiffs' exhibits and rules on the objections as follows:

The objections to exhibits 6, 6A, 9, 10, 12, 13, 14, 18, 19, 20, 27, 29 and 37 are sustained.

The objections to exhibits 44, 45, 46, 47 and 48, which are relevant to the question whether the administrative prerequisites to the filing of the action have been met, are overruled. This is a question never really contested by defendant, nor has any showing been made that the defendant seriously questions the authenticity of the documents.

The objections to exhibits 66 and 67 are overruled.

Counsel for the plaintiffs should prepare an appropriate decree, incorporating this Memorandum Opinion by reference, granting and denying the relief requested as set forth herein, and promptly present the same for entry after submission to counsel for the defendant for approval as to form. At the same time counsel for both sides should, if they cannot agree on the terms thereof, submit forms of a decree providing for the manner of determination and distribution of back pay for members of the affected class.

Reasonable attorneys' fees and disbursements will be allowed counsel for the plaintiffs, the amount of which will be fixed by the Court upon properly supported application of plaintiffs' counsel and after an opportunity to be heard on that issue is afforded the defendant.