Sylvia HAYES, Plaintiff,

v.

SHELBY MEMORIAL HOSPITAL, Defendant.

Civ. A. No. 81–G–0296–S.

United States District Court,
N. D. Alabama, S. D.

Aug. 18, 1982.

J. Terrell McElheny and Ezra B. Perry, Jr., Dominick, Fletcher, Yeilding, Acker, Wood & Lloyd, Birmingham, Ala., for plaintiff.

Carl E. Johnson, Jr., Bishop, Colvin & Johnson, Birmingham, Ala., for defendant.

## MEMORANDUM OPINION

GUIN, District Judge.

The plaintiff herein alleges that the defendant, Shelby Memorial Hospital, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.;* the Civil Rights Act of 1866, 42 U.S.C. § 1981; and the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1985. After a full trial on the merits, the court hereby incorporates in this memorandum opinion the appropriate findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

The plaintiff, Sylvia Hayes, was hired as a staff technician in the hospital's radiology department on August 11, 1980. In early October of 1980, Dr. J. Michael Straughn, the plaintiff's physician, confirmed the plaintiff's suspicion that she was pregnant. After discussing her occupation and her past pregnancy, Dr. Straughn informed Mrs. Hayes that she should be able to continue working until approximately April 24, 1981, provided that she follow the safety precautions generally prescribed for x-ray technicians. (Straughn deposition at 12.) Mrs. Hayes reported the fact that she was pregnant to the hospital's director of radiology, Gail Null, on October 8, 1980. Ms. Null then informed Dr. Morgan Eiland, the defendant's chief radiologist, of the plaintiff's pregnancy. On October 14, 1980, the plaintiff's employment with the hospital was terminated. At that time, the plaintiff was two months pregnant. The trial testimony of Dr. Eiland and Ms. Null reveals that the only reason the plaintiff was discharged was because she was pregnant.

The Civil Rights Act of 1871, 42 U.S.C. § 1983, provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The court finds that the defendant, a county hospital, was acting under color of state law within the meaning of section 1983 when it terminated the plaintiff's employment. *See Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Laje v. R. E. Thomason General Hospital,* 665 F.2d 724 (5th Cir. 1982).

■■ The pregnancy amendment to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, provides:

The terms because of sex or on·the basis of sex include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work ....

Public L. No. 95–555 § 1, 92 Stat. 2076 (1978). The statute clearly indicates that distinctions among employees that are based upon pregnancy are *per se* violations of Title VII. *See also* H.R. Rep. No. 948, 95th Cong., 2d Sess. 3, *reprinted in* [1978] U.S. Code Cong. & Ad. News 4749, 4751. Because the plaintiff's termination was based solely upon her pregnancy, the termination constitutes *per se* sex discrimination; thus, the plaintiff has established a *prima facie* case against the defendant.

■ Once a Title VII plaintiff has established a *prima facie* case, the burden shifts to the defendant to produce evidence of a lawful, nondiscriminatory reason for its action. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207, 216 (1981); *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 854, 28 L.Ed.2d 158, 164 (1971). If the employer meets this burden, the plaintiff may show that the employer had means available by which it could have accomplished its purpose without discriminatory effects. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d

280, 301 (1975); *Harriss v. Pan American World Airways, Inc.,* 649 F.2d 670 (9th Cir. 1980); *deLaurier v. San Diego Unified School Dist.,* 588 F.2d 674, 676 (9th Cir. 1978).

## I. *Defenses*

The defendant has raised the standard Title VII defenses as justification for its action: that the termination of the plaintiff's employment was a business necessity, and that nonpregnancy is a bona fide occupational qualification necessary to the normal operation of the defendant's enterprise. The bona fide occupational qualification defense is set forth in the statute itself, and provides that

> it shall not be an unlawful employment practice for an employer to hire and employ employees . . . on the basis of his religion, sex, or national origin in those certain instances where religion, sex, or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise.

42 U.S.C. § 2000e–2(e). The business necessity defense, a judicial creation, had its origin in *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), wherein it was used as a defense to a claim that a facially neutral employment practice had a discriminatory effect (disparate impact). In *Garcia v. Gloor,* the Court of Appeals for the Fifth Circuit analyzed the distinction between the business necessity defense (BND) and the bona fide occupational qualification defense (BFOQ), stating:

> The concepts of BFOQ and BND are related in the sense that each is founded on the functional necessities of business operation, but the BND applies to another situation: where an employer has utilized an employment test of [sic] some other requirement not patently discriminatory and the requirement has been demonstrated by the plaintiff to be discriminatory in effect, the employer may show in defense that the requirement was justified by business necessity.

609 F.2d 156, 163 (5th Cir. 1980) (citations omitted). *See also Dothard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977).

Although the present case involves an affirmative, deliberate discrimination rather than a neutral employment practice with a discriminatory effect, the court will, nevertheless, address the business necessity defense as well as the bona fide occupational qualification defense, and the application of these defenses to the facts at bar.

### A. *Business Necessity Defense*

In order for a defendant to show that business necessity justifies a particular employment practice, it must show that the practice is "necessary to safe and efficient job performance." *Dothard v. Rawlinson,* 433 U.S. at 332, n. 14, 97 S.Ct. at 2728, n. 14, 53 L.Ed.2d at 799, n. 14; *Blake v. City of Los Angeles,* 595 F.2d 1367, 1376 (9th Cir. 1979); *Harriss v. Pan American World Airways, Inc.,* 649 F.2d at 675. *See also Griggs v. Duke Power Co.,* 401 U.S. 424, 431–32, 91 S.Ct. 849, 856, 28 L.Ed.2d 158, 164–65 (1971). In *Robinson v. Lorillard Corp.,* 444 F.2d 791, the Court of Appeals for the Ninth Circuit, in analyzing the business necessity defense, determined that

> [t]he test is whether there exists an overriding legitimate business purpose such that the practice is necessary to the safe and efficient operation of the business. Thus, the business purpose must be sufficiently compelling to override any [discriminatory] impact; the challenged practice must effectively carry out the business purpose it is alleged to serve; and there must be available no acceptable alternative policies or practices which would better accomplish the business purpose advanced, or accomplish it equally well with a lesser differential [discriminatory] impact.

444 F.2d at 798 (footnotes omitted).

It is clear that the firing of a pregnant employee was not necessary to the safe and efficient provision of medical services by the hospital to its patients. The fact that the plaintiff was pregnant in no way

undermined her ability to take x-rays of patients. The defendant would have the court extend the concept of a business purpose "necessary to the safe and efficient operation of the business" to include the avoidance of possible future liability to the fetus. Such an unwarranted extension would shift the focus of the business necessity defense from a focus of concern for the safety of hospital patients to a focus of concern for hospital finances. Even if the court were to extend the concept of business purpose to include avoidance of possible litigation and consequent potential liability, the defendant has not met the second requirement of the defense—that there were no acceptable alternatives that would accomplish the purpose with a less discriminatory impact. *See Blake v. City of Los Angeles,* 595 F.2d at 1383. Hospital officials did not seriously look into other duties within the hospital that the plaintiff could perform, nor did they consider rearranging the plaintiff's duties within the Radiology Department. Evidence adduced at trial revealed that prior to the termination of the plaintiff's employment, two white radiology technicians at Shelby Memorial had become pregnant but were not fired; instead, one technician simply took greater precautions, and the other was allowed to read x-ray films during the course of her pregnancy. The defendant did not consider making any such special arrangements for the plaintiff, nor did the defendant inquire whether any day shift technician would have been willing to temporarily swap shifts with the plaintiff. If Mrs. Hayes had been allowed to work on the day shift, her exposure to radiation could have been greatly reduced.[1] In any event, the defendant has failed to show that no alternatives to its discriminatory treatment of the plaintiff were available. The prerequisites that must be met in order to establish the business necessity defense have not, therefore, been met in this case.

## B. *Bona Fide Occupational Qualification Defense*

[6,7] In order to successfully assert the BFOQ defense, a defendant must prove that sex is a "bona fide occupational qualification reasonably necessary to the normal operation of [its] particular business or enterprise." 42 U.S.C. § 2000e–2(e). The defense has been narrowly construed by the courts. *Dothard v. Rawlinson,* 433 U.S. 321, 333–34, 97 S.Ct. 2720, 2728–29, 53 L.Ed.2d 786, 799–800 (1977). For example, Courts of Appeal for the Fourth and Fifth Circuits have enunciated a two-pronged test for determining whether the BFOQ defense applies:

(1) The qualification invoked must be reasonably necessary to the essence of the employer's business, and

(2) The employer has a reasonable factual basis for believing that substantially all women would be unable to safely and efficiently perform the duties of the job.

*Harriss v. Pan American World Airways, Inc.,* 649 F.2d 670 (5th Cir. 1980); *Arritt v. Grisell,* 567 F.2d 1267 (4th Cir. 1977); *Usery v. Tamiami Trail Tours, Inc.,* 531 F.2d 224 (5th Cir. 1976); *Diaz v. Pan American World Airways, Inc.,* 442 F.2d 385 (5th Cir. 1971); *Weeks v. Southern Bell Telephone & Telegraph Co.,* 408 F.2d 228 (5th Cir. 1969). Both aspects of the test focus upon job performance; therefore, in order to successfully assert a BFOQ defense, the defendant must show a nexus between pregnancy risks and impaired ability to perform the job. Potential for fetal harm, unless it adversely affects a mother's job performance, is irrelevant to the BFOQ issue.[2]

---

**1.** The testimony showed that the larger number of technicians employed on the day shift enabled them to divide job functions so that a pregnant technician could avoid procedures that could not be performed behind lead walls. If a day shift technician had been willing to temporarily swap shifts with the plaintiff, the risk of radiation exposure to the fetus would

have been greatly reduced. Furthermore, the defendant made no attempt to show that it was precluded from requiring one of the technicians to accept a temporary transfer.

**2.** *See Burwell v. Eastern Airlines, Inc.,* 458 F.Supp. 474 (E.D. Va. 1978), *aff'd in part, rev'd in part,* 633 F.2d 361 (4th Cir. 1980), *cert.*

It is the opinion of this court that pregnancy would in no way have affected the plaintiff's performance as a radiologist. Because the plaintiff was perfectly capable of efficiently performing her duties, the defendant cannot rely upon the BFOQ defense.

## C. *Other Defenses*

Based upon the foregoing reasoning, the court concludes that neither Title VII defense relieves the defendant from liability for its discriminatory act. The defendant asserts that if neither the bona fide occupational qualification defense nor the business necessity defense applies to the facts at bar, then this court should create a defense based upon the "valid desire on the part of the defendant to minimize litigation . . . ." Defendant's brief at 11. The defendant's suggestion that it be allowed to terminate at will any pregnant employee merely because there is a possibility that the employee's child might later sue the hospital is untenable. The Constitution and laws of the United States recognize higher values than mere avoidance of speculative liability.

The court is acutely aware that exposure to ionizing radiation can have seriously damaging effects upon a developing fetus. The trial testimony of numerous experts offered by both parties in this cause was quite thorough with regard to the risks accompanying fetal irradiation. Having considered this testimony, the court is of the opinion that under the circumstances of this case, the defendant's termination of the plaintiff's employment, albeit motivated by concern for the welfare of the fetus, was an unnecessarily extreme measure. Evidence adduced at trial revealed that most of the x-rays performed by the radiology technicians at Shelby Memorial were done with the technician in a small, separate, lead-shielded room. The technician's exposure to radiation from such procedures would be minimal. Other procedures, however, would expose a technician to a higher level of radiation. For example, fluoroscopies, tomographies, and x-rays that require use of portable equipment cannot be performed behind a lead wall. In such instances, the technician, shielded by a lead apron and gloves, works as far from the source of radiation as possible. The court notes that many of these procedures may be prescheduled, thereby providing a certain degree of flexibility in the determination of which technician would perform the task.

The National Council on Radiation Protection and Measurements, in its study entitled *Review of NCRP Radiation Dose Limit for Embryo and Fetus in Occupationally-Exposed Women,* recommends that "[d]uring the entire gestation period, the maximum permissible dose equivalent to the embryo-fetus from occupational exposure of the expectant mother should be 0.5 rem." NCRP Report No. 53 at 2 (1977). According to the testimony of Dr. Gary Barnes of the Department of Diagnostic Radiology of the University of Alabama School of Medicine, University of Alabama in Birmingham, his department has formulated a pregnancy policy based upon the NCRP's recommendation. Through their studies, Dr. Barnes and his colleagues have determined that female employees in UAB's radiologic departments may continue employment during pregnancy without exposure to radiation levels greater than those recommended by NCRP.

The court recognizes that the defendant, due to the characteristics of its own operation, may not be in a position to implement the same pregnancy policy that is followed at the University of Alabama in Birmingham. Nevertheless, it is readily apparent from the evidence presented that the defendant made little or no effort to find an alternative to firing the plaintiff. Regardless of the defendant's concern

---

denied, 450 U.S. 965, 101 S.Ct. 1480, 67 L.Ed.2d 613 (1981); and In re *National Airlines, Inc.,* 434 F.Supp. 249 (S.D. Fla. 1977). Both cases were decided prior to the enactment of the pregnancy amendments to Title VII, yet both recognized the irrelevance of possible fetal harm to the BFOQ defense. *See also Maclennan v. American Airlines, Inc.,* 440 F.Supp. 466, 471 (E.D. Va. 1977).

about the effects of fetal irradiation, its paternalistic and extreme treatment of the plaintiff was unwarranted. The court concludes that the defendant's abrupt termination of the plaintiff's employment constitutes a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as well as a violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

## II. *Damages*

The remedial provisions of Title VII empower the court to exercise its equitable discretion to fashion the most complete relief possible to a discriminatee. *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 763, 96 S.Ct. 1251, 1254, 47 L.Ed.2d 444, 461 (1976). The court's equitable discretion in such matters is quite broad under section 706(g) of Title VII, which provides that a court may "order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ..., or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e–5(g).

▇▇▇ Unquestionably, the plaintiff has sustained economic loss as a result of the defendant's discriminatory act. Once economic loss has been established, back pay should be awarded unless special circumstances are involved. *Parson v. Kaiser Aluminum & Chemical Corp.*, 575 F.2d 1374, 1391 (5th Cir. 1978); *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 357 (5th Cir. 1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978); *Carey v. Greyhound Bus Co.*, 500 F.2d 1372, 1378 (5th Cir. 1974); *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 252–53 (5th Cir. 1974). *See generally Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). In the present case, the evidence reveals that the plaintiff has suffered economic loss because of her wrongful termination; accordingly, she is entitled to an award of back pay.

▇▇▇ Under the provisions of Section 706(g) of Title VII, the amount of back pay that may be awarded a claimant shall be reduced by "[i]nterim earnings or amounts earnable with reasonable diligence ...." 42 U.S.C. § 2000e–5(g). *See Merriweather v. Hercules, Inc.*, 631 F.2d 1161, 1167 (5th Cir. 1980). Although the claimant is under a duty to mitigate damages, the law does not require a claimant to be successful in mitigation; instead, a claimant must make a reasonable, good faith effort to mitigate. *United States v. Lee Way Motor Freight, Inc.*, 625 F.2d 918 (10th Cir. 1979).

▇▇▇ The burden is upon the defendant to prove any failure by the claimant to mitigate damages. *Taylor v. Philips Indus., Inc.*, 593 F.2d 783 (7th Cir. 1979); *Di Salvo v. Chamber of Commerce*, 568 F.2d 593 (8th Cir. 1978). In the present case, the plaintiff acknowledged at trial that she did not pursue any other employment opportunities after the termination of her employment, and that her assumption of work did not occur until several months after the birth of her child. The plaintiff testified that she did not seek another position because she assumed that any such effort would have been fruitless in light of her pregnancy. Perhaps the plaintiff's assumption would have been proved correct had she made some effort to seek employment. No testimony was provided, however, regarding any efforts that could be construed as diligence on her part, such as checking classified advertisements, registering with employment agencies, or discussing job openings with acquaintances. Such efforts have been held to be necessary in order for a back pay claimant to meet the reasonable diligence standard of 42 U.S.C. § 2000e–5(g). *See Sprogis v. United Air Lines*, 517 F.2d 387, 392 (7th Cir. 1975); and *Helbling v. Unclaimed Salvage & Freight*, 489 F.Supp. 956 (E.D. Pa. 1980). A trial court may exercise its discretion in determining whether a plaintiff should have or could have exercised more reasonable diligence in seeking alternative employment. *Brito v. Zia Co.*, 478 F.2d 1200, 1204 (10th Cir. 1973). In view of the court's belief that the plaintiff did not display a good faith effort in seeking alternative employment, the court is unwilling to grant her request for back pay

for the period between October 14, 1980, the date of her discharge from employment at Shelby Memorial, to November 15, 1981, the date she began working at Baptist Medical Center-Montclair. The court will, however, in its equitable discretion, grant as damages an award of $1,361.76, which represents the disparity in compensation between Baptist Medical Center-Montclair and the higher rate of pay she would have enjoyed at Shelby Memorial during the period between November 15, 1981, and December 4, 1981, the date of the conclusion of the trial in this cause.

Although the principle of mitigation applies to awards of back pay pursuant to section 1983 as well as pursuant to Title VII,[3] compensatory damages for humiliation, embarrassment, and emotional distress are recoverable under section 1983. *Brule v. Southworth,* 611 F.2d 406 (1st Cir. 1979); *Baskin v. Parker,* 588 F.2d 965 (5th Cir. 1979); *Garner v. Giarrusso,* 571 F.2d 1330 (5th Cir. 1978); *Hostrop v. Board of Junior College District No. 515,* 523 F.2d 569 (7th Cir. 1975). The court is convinced from the evidence that the plaintiff has suffered embarrassment, humiliation, and emotional distress as a result of the defendant's unlawful act. Accordingly, the court awards the plaintiff $6,000.00 as compensatory damages under section 1983.

Based upon the foregoing analysis, the court concludes that the plaintiff is to be awarded as damages the sum of $7,361.76. A separate order consistent with this opinion is being entered contemporaneously herewith.

---

**3.** *See Greminger v. Seaborne,* 584 F.2d 275 (8th Cir. 1978); *O'Neal v. Gresham,* 519 F.2d 803 (4th Cir. 1975); *Dean v. Timpson Independent School District,* 486 F.Supp. 302 (E.D. Tex. 1979).