**Marsha ENSOR and Abby Jo Guss**

v.

**Frank PAINTER d/b/a Mountaineer Restaurant.**

**No. Civ-2-85-348.**

United States District Court, E.D. Tennessee, Northeastern Division.

Feb. 6, 1987.

Michael A. Faulk, Church Hill, Tenn., for plaintiffs.

Charlton R. DeVault, Jr., Kingsport, Tenn., for defendant.

## MEMORANDUM AND ORDER

HULL, Chief Judge.

This is a civil rights action for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* This action came before the Court for trial without a jury on January 29, 1987.

Plaintiffs Abby Jo Guss and Martha Ensor allege that the defendant, Frank Painter, d/b/a Mountaineer Restaurant, discharged them because they were pregnant. Defendant denies that he discharged plaintiffs because they were pregnant and claims that he discharged them because they were poor workers and unreliable employees.

The specific provisions of Title VII of the Civil Rights Act of 1964 applicable in this case are 42 U.S.C. § 2000e–2(a)(1), which provides in pertinent part that:

> It shall be an unlawful employment practice for an employer—(a) to ... discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex ...;

and 42 U.S.C. § 2000e(k), which provides in pertinent part that:

> The terms "because of sex" or "on the basis of sex" include but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit

programs, as other persons not so affected but similar in their ability or inability to work,....

In a Title VII action, plaintiffs have the burden of proving, by a preponderance of the evidence, a *prima facie* case of discriminatory treatment in employment. If the plaintiffs succeed in proving the *prima facie* case, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employees' discharges. Should the defendant carry this burden, the plaintiffs are then given the opportunity to establish that the stated reason is in fact a pretext for unlawful discrimination. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–256, 101 S.Ct. 1089, 1093–1095, 67 L.Ed.2d 207 (1981); *McDonnell-Douglas v. Green*, 411 U.S. 792, 802–804, 93 S.Ct. 1817, 1824–1825, 36 L.Ed.2d 668 (1973). However, the burden of persuasion at all times remains with the plaintiffs. 450 U.S. at 256, 101 S.Ct. at 1095.

Prior to trial, the parties stipulated that plaintiffs were employees within the definition of Title VII of the Civil Rights Act of 1964; that defendant is an employer within the meaning of § 701(b), (g), and (h) of Title VII, Civil Rights Act of 1964; and that plaintiffs had received the requisite notice of right-to-sue from the Equal Employment Opportunity Commission. Additionally, the Court makes the following findings of fact and conclusions of law.

Abby Jo Guss, twenty, began working as a waitress in defendant's restaurant in April, 1983, while she was still a high school student. She continued to attend high school and to work at the restaurant thirty to thirty-five hours per week until she discovered that she was pregnant in July, 1984.

On August 1, 1984, Mrs. Guss told defendant that she was pregnant and showed him a doctor's note, which stated that she could continue to work until further notice. Defendant asserted that he, not her doctor, would determine how much longer she would work. On August 13, 1986, plaintiff went on vacation with her husband. When she returned a week later, she discovered that defendant had not scheduled her to

work. Defendant's wife, who also worked at the restaurant, told plaintiff that they would call when she was needed.

Thereafter, plaintiff made four appointments to discuss her schedule with the defendant; but either defendant was "too busy" or plaintiff was not punctual. As a result, they didn't meet until August 29, 1984. On that date, Mrs. Guss presented two forms which she had obtained from the unemployment Security office to defendant's wife. One form was a "partial separation notice", the other a "separation notice". Again, the defendant was too busy to talk to the plaintiff. However, when defendant's wife presented the two unemployment forms to the defendant, he told plaintiff that she was fired and signed the separation form, noting that plaintiff "Got pregnant, could not perform her work duties."

On April 1, 1985, plaintiff's attorney advised the defendant that plaintiff had been released from her doctor's care and was "ready, willing and able to return to work." However, defendant did not contact plaintiff.

Plaintiff Marsha Ensor, twenty-two, began working as a waitress at defendant's restaurant in November, 1981. On August 1, 1984, she told defendant that she was pregnant and showed him a note from her doctor, which stated that she would be able to continue working until further notice. On August 2, 1984, plaintiff fainted in the restaurant kitchen and was told to go home. That evening she returned to the restaurant and asked to see the defendant. He sent a message that he was too busy to talk and that plaintiff should go home. When plaintiff persisted, he fired her. On her separation form, defendant remarked: "Became pregnant could not perform her work duties." Plaintiff's attorney notified defendant on April 1, 1985 that plaintiff was able to return to work. However, defendant did not reply.

■ After reviewing the forementioned findings of fact, the Court finds that both plaintiffs clearly belong to a protected class under Title VII and have stated a *prima facie* case of sex discrimination in employment. As to defendant's contention

that he fired the plaintiffs for cause and not due to their pregnancy, the Court makes the following findings.

While plaintiffs Guss and Ensor had some normal complications associated with pregnancy, both plaintiffs were able to perform their duties at the time defendant discharged them. As defendant testified, plaintiff Guss was adept at preparing vegetables for the salad bar, was a good kitchen worker, and could have continued work during her pregnancy. Understandably, plaintiff Ensor's fainting caused defendant concern for plaintiff's safety as well as for the safety of his patrons. However, plaintiff had fainted three times prior to this incident; yet, she had never been discharged previously.

Furthermore, while neither plaintiff appears to have been an ideal employee, both had been tardy, sick, and, occasionally, lackadaisical in their work prior to their pregnancies. Still, defendant appears to have tolerated this misconduct until plaintiffs became pregnant. Moreover, the Court finds defendant's protestations that he was "too busy" to meet with either of these plaintiffs incredible; and, finally, the Court cannot accept that it was mere coincidence that defendant decided to discharge two pregnant workers for misconduct within a matter of days.

■ Therefore, after careful consideration, the Court finds that plaintiffs' pregnancies made a difference in defendant's decision to discharge them and that defendant's articulated reasons are pretextural. Further, the Court finds that the defendant intentionally discriminated against the plaintiffs and that they are, therefore, entitled to awards of back pay and lost benefits. *U.S. Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983); *Fields v. Volger*, 723 F.2d 1216 (6th Cir.1984).

Marsha Ensor claims to have lost $6,400.08 in wages as a result of her discriminatory discharge. During 1984 she earned an average of $121.03 at defendant's restaurant; and she estimates that she could have continued working, despite her pregnancy, until January 31, 1985, a total of twenty four weeks. She also claims to have lost three weeks' wages between March 25, 1985, the date on which her doctor released her to work, and April 15, 1985, the day she found subsequent employment. Finally, she claims to have lost $2,132.27 between April 15, 1985 and January 29, 1987, the date of the trial, due to the disparity between her salaries at her subsequent employment and defendant's restaurant.

Abby Guss claims to have lost $6,442.80 in wages due to her discharge. During 1984, she earned an average of $99.12 per week at defendant's restaurant; and she estimates that she could have worked an additional ten weeks and earned $991.20 if defendant had not discharged her. She also claims to have lost wages of $1982.40 between March 28, 1985, the date her doctor released her to work, and August 31, 1985, the date she withdrew from the job market. Finally, she claims to have lost wages of $3,469.20 between February 1, 1986, the date she reentered the job market, and September 31, 1986, the date she again withdrew.

Of course, both plaintiffs were under a duty to mitigate damages. 42 U.S.C. § 2000e–5(g). While Marsha Ensor applied for subsequent employment in August and September 1984, she failed to present evidence that she continued to seek employment after September, 1984.

■ Accordingly, the Court finds that she failed to use reasonable diligence to obtain subsequent employment between October, 1984 and January, 1985. *Hayes v. Shelby Memorial Hospital*, 546 F.Supp. 259 (D.C.Ala.1982), *aff'd* 726 F.2d 1543. Furthermore, the Court finds that plaintiff Ensor has maintained a lower salary at her subsequent employment for nearly two years without evidence of having sought a higher-salaried position. Therefore, the Court finds that plaintiff Ensor has failed to mitigate her damages and that her award of back pay should be adjusted accordingly.

■ Abby Guss has not worked since defendant discharged her in August, 1984. She claims that she searched diligently for employment until August 1985; that she voluntarily left the job market at that time;

that she re-entered the job market on February 1, 1986 and searched for employment until September 31, 1986, when she again withdrew. While plaintiff has documented her numerous applications for work during these periods, the Court notes that she and Marsha Ensor were similarly situated. Yet, plaintiff Ensor found work within three weeks of obtaining her doctor's release, while plaintiff Guss has failed to find work in fifty-five weeks. Accordingly, under the "average man" theory espoused in *U.S. v. Lee Way Motor Freight, Inc.*, 625 F.2d 918 (10th Cir.1979), the Court finds that plaintiff failed to use reasonable diligence to mitigate her damages and that, therefore, her damages should be adjusted accordingly.

Therefore, for all those reasons stated herein, it is ORDERED that judgment shall enter in favor of the plaintiffs and against the defendant in the following amounts: Marsha Ensor—$2,532.11 and Abby Guss—$2,973.60. In addition, it is ORDERED that plaintiffs recover costs and reasonable attorney's fees. Counsel for plaintiffs should submit an itemized listing by affidavit of hours expended in this case.